Corliss LAMONT and Margaret I. Lamont, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 21, Docket 28902.

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1964.

Decided Dec. 17, 1964.

Isidore R. Tucker, New York City, for petitioners.

Robert A. Bernstein, David O. Walter, Attys., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David A. Bernstein, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

At issue in this petition are tax deductions claimed by taxpayer Corliss Lamont[1] as losses from his professional activities in the taxable year 1957. The Tax Court of the United States, Withey, J., disallowed the deductions, and upheld the Commissioner's assessment of a $5,286.84 deficiency in taxpayer's income taxes for that year. It found that Lamont's activities as a teacher, writer, publisher, and lecturer were not carried on as a trade or business within the meaning of that term as used in §§ 162(a) and 165 of the Internal Revenue Code of 1954,[2] permitting deductions for business

---

1. The instant case is concerned only with the activities of taxpayer Corliss Lamont. His wife, Margaret I. Lamont, is a party to the action because the disputed tax returns for 1957 were filed jointly by husband and wife.

2. SEC. 162. TRADE OR BUSINESS EXPENSES.

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." (26 U.S.C. 1958 ed., § 162).

SEC. 165. LOSSES.

"(a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"(c) *Limitation on losses of individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

"(1) losses incurred in a trade or business;

"(2) losses incurred in any transaction entered into for profit, though not con-

expenses and losses. We affirm the decision of the Tax Court, and agree with its determination that the taxpayer's activities did not constitute such a trade or business for reason that they were not engendered by the motive or intent of realizing profits.

The taxpayer is a prominent figure in the intellectual and academic world. He is perhaps best known as a philosopher and lecturer, although he has written and edited many books and pamphlets and has taught philosophy at Columbia University. He has also attempted publishing, both on his own and as an investor, in several newspapers and magazines. His own publishing venture, started in 1952, was the "Basic Pamphlet Series" which consisted of short pamphlets on various subjects, priced at 10 cents each. Lamont printed, advertised, and sold these himself.

Lamont has also lectured extensively throughout the country, principally on the topics of philosophy, civil liberties and international affairs. He has appeared on radio and television as a guest commentator on current affairs and public issues. His activities were a natural consequence of his family background and education. The family provided a literary and intellectual environment for the taxpayer. He was educated at Harvard, Oxford, and Columbia Universities. He exhibited an interest in writing during his college years, publishing an article in the New York Herald Tribune; later his doctoral thesis was published. His writing activities have been extensive as appears from the list of the books and articles which Lamont authored or edited.[3] Despite his activity in this field, however, Lamont's writings have never realized a profit for their author. The royalties received from his books and pamphlets have never offset the taxpayer's expenses in producing them. In his activities other than writing, Lamont has also suffered continuous losses.

From all of his activities combined, that is, as an author, lecturer, teacher and publisher, Lamont realized a profit only twice in the twelve years preceding the taxable year 1957. These were the years 1946 and 1954, with profits of $254.38 and $1,500.31, respectively. In 1957, his income from teaching was about $400, while the income from his other activities, writing and lecturing, was about $88. Lamont's losses have generally been in the neighborhood of $2,000 a year; in 1957, however, the taxable year in question, he claimed a loss of $11,388.98. This loss was disallowed by the Commissioner of Internal Revenue, resulting (with minor adjustments for several disputed charitable contributions) in a deficiency assessment of $5,286.84.

The Tax Court further found that the taxpayer had conducted his professional activities in a business-like manner, paying careful attention to the keeping of books and records, trying to minimize expenditures, and maintaining an office at his residence for these activities. The office had a separate telephone, files, and space for his secretarial and editorial assistance. None of these measures, however, appeared to lessen Lamont's continual losses.

From a financial standpoint, these losses were immaterial to the taxpayer. Lamont himself has always been a wealthy man; throughout his adult life, he had lived on an independent income received from investment sources. During the seven years preceding 1957, this income ranged from $94,000 to $289,000.

Dr. Lamont argues that despite the continual losses realized in his professional activities and his substantial independent income and wealth, the facts clearly demonstrate the existence of a bona fide profit motive. The taxpayer supports this claim by citing his testimony to that effect in the Tax Court, and by the fact that he has been engaged

nected with a trade or business" (26 U.S.C. 1958 ed., § 165). These sections are unchanged in the 1964 amendments.

3. T.C.M. 1964-2, P-H para. 64,002, filed January 8, 1964.

in these activities for thirty years and has always conducted them in a business-like manner. Although continuity and efficiency of operations are criteria which would tend to support the existence of a trade or business, we cannot agree with the taxpayer's contention in the instant case. The totality of circumstances surrounding Lamont's background, his interest in the wide dissemination of his ideas, his activities and financial status justifies the conclusion of the Tax Court that a profit motive was lacking. Certainly, we cannot say that the Tax Court was clearly erroneous in this finding.

■ For the purpose of qualifying for deductions under §§ 162(a) and 165 (c) (1), a course of activity must be considered to be a trade or business. It is well established that the existence of a genuine profit motive is the most important criterion for the finding that a given course of activity constitutes a trade or business. In his treatise on the law of taxation, Mertens writes:

> "Under any definition, a business means a course of activities engaged in for profit. Acts engaged in which are admittedly for a purpose other than profit do not evidence business engagement." 4 Mertens, Law of Federal Income Taxation, § 25.08 (1960).

In the case of White v. Commissioner, 227 F.2d 779 (6 Cir. 1955), affirming 23 T.C. 90, the taxpayer had built an expensive ballistics laboratory. As with Lamont, this taxpayer was independently wealthy, having received a large inheritance. The taxpayer devoted his full time and energies to the operations of the laboratory. Although the laboratory performed worthy services for private industry and the federal government, the taxpayer was not permitted to deduct the losses. The Court found that the ballistics laboratory was not a trade or business because "[t]he essential that was missing * * * was a profit motive on the part of the taxpayer" (227 F.2d 780). In Hirsch v. Commissioner, 315 F.2d 731 (9 Cir. 1963), the taxpayer sought to deduct a worthless debt incurred in his activities as an officer, director and executive of a race track syndicate. The Court found that the race track could not be considered as a trade or business because the basic and dominant intention of the taxpayer was not a desire for profit.[4]

■ While the expectation of profit need not be a reasonable one, and the business need not realize an immediate profit, the activities must be entered into and carried on in good faith for the purpose of making a profit. Hirsch v. Commissioner, supra; Doggett v. Burnet, 62 App.D.C. 103, 65 F.2d 191 (1933). Lamont has not met the burden of proof incumbent on him to show that he had the requisite profit motive for a trade or business. Ullman v. Commissioner, 264 F.2d 305 (2 Cir. 1959); 9 Mertens, Law of Federal Income Taxation, § 50.61 (1958).

■ The taxpayer has urged in his brief that we are not bound by Rule 52 (a) of the Federal Rules of Civil Pro-

---

4. The Hirsch case speaks of profit as being the basic and dominant motive of a bona fide trade or business. Words such as "basic," "dominant," and "primary," describing the degree of necessary profit motivation, are usually to be found in cases involving transactions under § 165 (c) (2)—"losses incurred in any transaction entered into for profit, though not connected with a trade or business." See, e.g., Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Austin v. Commissioner, 298 F.2d 583 (2 Cir. 1962); Ewing v. Commissioner, 2 Cir., 213 F.2d 438 (1954). The instant case arises under § 165(c) (1)—"losses incurred in a trade or business." Although it appears that a somewhat stronger profit motive is called for under § 165(c) (2) than § 165(c) (1), it is clear that § 165(c) (1) requires the existence of at least a substantial profit motive. White v. Commissioner, 6 Cir., 227 F.2d 779 (1955); Hirsch v. Commissioner, 9 Cir., 315 F. 2d 731 (1963); cases cited in 4 Mertens, Law of Federal Income Taxation, § 25.-08. Lamont's desire for profit, if at all present, was certainly *de minimis;* in no way could it be considered substantial.

cedure, requiring us to uphold lower court findings of fact unless "clearly erroneous." The taxpayer contends that this rule is applicable only to basic facts and not to differing inferences which may be drawn from undisputed basic facts. However, in Austin v. Commissioner, 298 F.2d 583, 585 (2 Cir. 1962), we held that the "clearly erroneous" test applied to such factual inferences. In Austin we said that we would not draw conclusions different from those of the Tax Court on the basis of undisputed evidentiary facts, unless that court was clearly erroneous in its finding of fact. We felt ourselves bound by Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In that case, involving the question of whether or not a specific transfer to a taxpayer amounted to a gift, the Supreme Court said:

> "Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ.Proc. 52(a) * * *. The rule itself applies also to factual inferences from undisputed basic facts, * * * as will on many occasions be presented in this area. * * * And Congress has in the most explicit terms attached the identical weight to the findings of the Tax Court" (363 U.S. 291, 80 S.Ct. 1200, 4 L.Ed.2d 1218).

The standard to be applied in using the "clearly erroneous" rule is given in United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). It was there said that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (333 U.S. 395, 68 S.Ct. 542, 92 L.Ed. 746).

In the instant case, we are left with no such conviction. The findings and conclusions of the Tax Court were amply supported by the evidence. We have considered the other arguments advanced by the taxpayer and find them without merit.

Order affirmed.