Alfred M. Cox and Helen B. Cox v. Commissioner.
Cox v. Commissioner
Docket No. 94583.
United States Tax Court
T.C. Memo 1965-5; 1965 Tax Ct. Memo LEXIS 329; 24 T.C.M. (CCH) 23; T.C.M. (RIA) 65005; August 14, 1965
Sidney B. Gambill, for the petitioners. Gary L. Stansbery, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: [1] Respondent determined the following deficiencies in petitioner's income taxes for the years 1958 and 1959. Taxable Year
Deficiency
1958
$ 5,389.80
1959
12,133.59
*330 Certain issues raised by the pleadings have been conceded by the parties and will be given effect in the Rule 50 computation. Two issues remain for decision: (1) Whether losses sustained by petitioner Alfred M. Cox in the operation of his farm property are deductible as having been incurred in a trade or business; and (2) whether petitioner incurred a casualty loss in 1959. Findings of Fact Some of the facts have been stipulated and are hereby found accordingly. Issue 1 Petitioners are husband and wife residing at 2225 William Penn Highway, Pittsburgh, Pennsylvania. They filed joint Federal income tax returns for the years 1958 and 1959 with the district director of internal revenue at Pittsburgh. They kept their books and records on the calendar year basis and used the cash receipts and disbursements method of accounting. Alfred M. Cox (hereinafter called petitioner) is an experienced, knowledgeable, and successful businessman. He is the principal shareholder and chief executive officer of four corporations located in Pittsburgh. His income is primarily derived from the salaries paid him by these corporations and from dividends. The following schedule shows his total *331 salary and dividend income for the years 1955 through 1960: Year
Salaries
Dividends
1955
$66,930.00
$ 5,777.88
1956
72,227.50
5,634.75
1957
81,966.00
6,849.30
1958
85,821.40
14,302.30
1959
90,496.70
14,049.00
1960
97,006.00
3,300.36
On June 5, 1954, the petitioner purchased an 80-acre farm in Butler County, Pennsylvania. Twenty-five acres were in timberland and the remainder was suitable for farming. There were two farm dwellings on the land, as well as a barn, a machine shop, and a six-room frame cottage. All of these buildings with the exception of the cottage were involved in the operation of the farm. The cottage was used by petitioner during his weekend visits. Its cost was segregated from the total purchase price. No depreciation was taken on it and none of the expenses incurred in maintaining it for petitioner's private use were claimed as deductions. An elderly tenant farmer had charge of the farm for the previous owner. He continued as petitioner's tenant farmer for about 2 years. Petitioner then employed Ardel Stiver, a younger man who had been raised on a farm and possessed the necessary experience. Stiver has six children. In *332 order to make more room for them, petitioner remodeled and enlarged the tenant farmhouse. Petitioner's stated purpose in buying the farm was to raise beef cattle. His alleged goal was a herd of 35 to 40 head. To start his herd he purchased two cows and two bull calves in October 1954. The following is a schedule of sales from the herd: 1954
1955
1956
1957
1958
1959
1960
1961
1962
Sale of cattle
$475.61
$1,061.14
raised
Profit (loss) on
218.75
$137.12
$87.03
$ (952.58)
sale of cattle
purchased In 1963 petitioner sold all 16 head of cattle then on hand. He did this to change his method of operation. He now buys cattle in the spring and fattens them for sale in late fall to avoid the expense of wintering a herd. Petitioner purchased an additional 69-acre farm on August 20, 1959. All but 6 acres of this additional land were suitable for pasturage. On this farm were two frame houses, a barn, tool building, machinery shed, grain bin, and silo. The farm buildings were immediately put to use. The two frame dwellings were made available as rental properties and were occupied by tenants not connected with *333 the farming activities. Petitioner acquired certain farm machinery in purchasing the two farms. He has increased his inventory of farm machinery from time to time. These purchases have reduced labor costs. From the outset petitioner followed the guidance of governmental experts in operating his farm. At their direction he made periodic soil tests, rotated crops, and applied suggested fertilizers and lime applications. The Federal Government has shared in the costs of these improvements and petitioner has received United States Treasury checks defraying portions of the costs of these recommended programs. The farm and cattle herds have been assigned Federal identification numbers. None of the farm crops were produced for sale. There are no recreational facilities available, other than those usually found on any other farm. Petitioner's cottage is plain and of modest size and is used as a weekend retreat. He has no domestic help to serve him there. The following is a schedule of farm income, expenses and losses for the years 1954 through 1962 and the ratio of income to expense: Year
Income
Expenses
%
Losses
1954
$ 3,122.98
$ 3,122.98
1955
$ 107.54
7,211.40
1.5
7,103.86
1956
7,144.12
7,144.12
1957
137.20
9,180.90
1.5
9,043.70
1958
694.36
8,010.72
8.7
7,316.36
1959
384.32
11,335.90
3.4
10,951.58
1960
657.25
16,003.38
4.1
15,346.13
1961
1,291.13
13,636.17
9.5
12,345.04
1962
491.81
12,118.87
4.1
11,627.06
Totals
$3,763.61
$87,764.44
4.3
$84,000.83
*334 Based on petitioner's own statements made to respondent's revenue agent, he could not have made a profit from the type of beef cattle operation used by him from 1954 to the summer of 1963. The farm was not operated by petitioner on a commercial basis for profit during the years in issue. Issue 2 Since 1949 the petitioner has lived at his present address in Pittsburgh. His home is a red, colonial-style brick house. In the summer of 1959 its fair market value was $70,000. At that time an extreme drought occurred in the Pittsburgh area which extended into the fall. This drought caused the plants and shrubs surrounding petitioner's home to enter the winter season in an abnormally dry condition. The root systems of petitioner's plants and shrubs are located some 18 inches below the ground. They absorb moisture in the winter, but since the ground froze following the drought, no moisture could penetrate to the root system, and they died. This condition was not discovered until the following spring when they failed to leaf and bud. Petitioner's expert witness was called in to replace the dead plants and shrubs. He did so at a cost to petitioner of $3,475.50. The elements that cause *335 the death of the plants and shrubbery were (1) the drought that occurred in the summer and fall of 1959 and (2) the freezing of the ground during the early winter months. The loss occurred in 1959. Opinion Issue 1 - Farm Losses Petitioner has claimed substantial losses incurred in the operation of his farm for 1958 and 1959. Respondent contends that these losses are not deductible because under section 165(c)(1), [2] Internal Revenue Code of 1954, the petitioner was not in the "trade or business" of farming. The main thrust of this contention is that petitioner lacked a profit motive. It is true that petitioner employed tenants to operate his farm; that State and Federal agricultural specialists were consulted and their recommendations followed; that petitioner spent some of his own time on the farm supervising the operations; that adequate books and records were maintained; that the farm was equipped with the necessary buildings and machinery; and that *336 petitioner's cottage thereon was modest in size. It is also true that petitioner operated the place as a farm during the years in issue. But the mere operation of a farm is not enough. To qualify as a "trade or business" within the framework of the statute and the applicable Treasury regulations, [3] the farm must be operated as a business enterprise for the purpose of making a profit. It is the expectation of gain that is important. The activity must be of such a nature that the taxpayer might reasonably expect a profit. Doggett v. Burnet, 65 F. 2d 191, 194 (C.A.D.C. 1933); and Henry P. White, 23 T.C. 90 (1954), affirmed per curiam 227 F. 2d 779 (C.A. 6, 1955). In essence, what we must determine is whether the petitioner's farm activities were "engendered by the motive or intent of realizing profits." Lamont v. Commissioner, 339 F. 2d 377, (C.A. 2, December 17, 1964), affirming a Memorandum Opinion of this Court. Or, stated differently, did petitioner intend to operate the farm as a profitable enterprise? We think not. In ascertaining such intent, an essential consideration is the petitioner's receipts and expenditures from the venture. *337 Thacher v. Lowe, 288 F. 994 (S.D.N.Y. 1922). The evidence as to receipts and disbursements in this case shows a striking comparison. The insignificant receipts as compared with the high disbursements certainly tend to establish a lack of profit motivation. When this evidence is considered along with petitioner's own statements [4] in the record, it is clear to us that he had no profit motive. He testified that his aim was to raise a herd of between 35 and 40 head of cattle on his farm. However, when questioned by respondent's agent as to what profit such a herd size might show, petitioner admitted that the maximum annual receipts which he could expect from such an operation would be $4,000 to $5,000 annually. In fact, the total income in any one year never equaled the depreciation expense in such year. Even if we use the petitioner's suggested projections, we are unable to find a profit intent. While in 1963 petitioner changed his cattle raising activities, this change does not alter his intent for prior years. Any vain hope by petitioner that on some remote day a profit will result, after sustaining losses over a 9-year period, is not sufficient in our opinion to make *338 the operation of the farm a business. On this record we hold that during the years in controversy the petitioner operated his farm without any genuine intent to earn a profit and, *339 therefore, the losses were not incurred in a "trade or business." See Lamont v. Commissioner, supra; Hirsch v. Commissioner, 315 F. 2d 731 (C.A. 9, 1963); and American Properties, Inc., 28 T.C. 1100 (1957), affd. 262 F. 2d 150 (C.A. 9, 1958). Issue 2 - Casualty Loss Respondent apparently concedes that the death of petitioner's plants and shrubs is a casualty loss in the amount claimed. Pantzer v. United States, an unreported case ( S.D. Ind., 1964, 14 A.F.T.R. 2d 5352, 64-2U.S.T.C. par. 9641). He argues only that petitioner has failed to prove that the loss actually occurred in the year claimed. Petitioner's expert witness testified that the cause of the loss was a drought which occurred in the summer and fall of 1959 and an early freeze. Although it is true that the loss was not discovered until 1960, the expert's uncontradicted testimony was that an earlier detection would have been impossible. The occurrence of the loss, and not the time of discovery, determined the year in which the loss was incurred. Since we have found as a fact that the loss occurred in 1959, the loss was properly deducted in that year. *340 To reflect the determinations made herein and the concessions of the parties on other issues, Decision will be entered under Rule 50. Footnotes
1. This case was heard by Judge Clarence V. Opper and briefs were duly filed. Judge Opper died on June 19, 1964. This case, not having been disposed of, was reassigned to Judge Howard A. Dawson, Jr.↩, on November 5, 1964, and notice was given to the parties that any request for rehearing or reargument might be presented to him within 30 days. No such requests have been received.
2. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection(a) shall be limited to - (1) losses incurred in a trade or business;↩
3. Sec. 1.61-4(d), Income Tax Regs.
(d) Definition of "farm". As used in this section, the term "farm" embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms; also plantations, ranches, and all land used for farming operations. All individuals, partnerships, or corporations that cultivate, operate, or manage farms for gain or profit, either as owners or tenants, are designated as farmers. Sec. 1.165-6(a)(2), Income Tax Regs.
(2) If the taxpayer owns and operates a farm for profit in addition to being engaged in another trade or business, but sustains a loss from the operation of the farming business, then the amount of loss sustained in the operation of the farm may be deducted from gross income, if any, from all other sources. ↩
4. Petitioner testified: The whole thing here is: Is this a farm or isn't it a farm? I don't think it makes any difference whether you lose money or make money.↩