Geza Szmak v. Commissioner.
Szmak v. Commissioner
Docket No. 1166-63.
United States Tax Court
T.C. Memo 1965-301; 1965 Tax Ct. Memo LEXIS 29; 24 T.C.M. (CCH) 1660; T.C.M. (RIA) 65301; November 16, 1965
Geza Szmak, pro se, 220 Hansen Ave., Bridgeport, Conn. Charles M. Costenbader, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioner's income taxes and additions to tax: Additions to Tax
Taxable
Section 6653(a)
Year
Deficiency
I.R.C. 1954
1957
$7,300.60
$365.03
1958
6,284.68
314.23
1959
1,108.60
55.43
The parties have settled one of the issues. In addition, the respondent conceded at the trial that petitioner is not liable for the additions to tax under section 6653(a), Internal Revenue Code of 1954. Consequently, there remains for decision only the question of whether certain expenses *30 incurred by the petitioner are deductible "trade or business" expenses under the provisions of section 162(a), Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are so found. Geza Szmak (hereafter called petitioner) resides at 220 Hansen Avenue, Bridgeport, Connecticut. He is a cash basis taxpayer who filed his Federal income tax returns for the years 1957, 1958, and 1959 with the district director of internal revenue, Manhattan, New York. For some time the petitioner has been co-manager of the Construction Survey Cooperative, a service organization engaged in the business of estimating the costs of construction work for contractors who use the information in competitive bidding for construction contracts. Petitioner received payment from the Cooperative for his services as follows: Year
Amount
1957
$15,802
1958
15,045
1959
6,741
For many years petitioner has used the income he earns from his work with the Cooperative to defray part of the costs he incurs as a teacher, writer, publisher, and lecturer on the subjects of surveying and economics. Petitioner organized the Construction Surveyors *31 Institute (hereafter called Institute) in Chicago, Illinois, in 1926 as a society for professional surveyors. The Institute's charter defines its aims, purposes, and objectives as follows: Article II - OBJECTIVE To unite professional surveyors and their associates for the scientific development, promotion, preparation and performance of surveying services. Article III - AIM Improve the analysis, appraisal, attestment and supervision of construction; thereby bettering surveying, designing and management practices generally. Article IV - PURPOSE Creating conditions under which progress may be expanded by: (a) Eliminating waste and stabilizing prosperity. (b) Improving competition, cooperation and coordination. (c) Raising the standard of ethics, efficiency and economy. (d) Providing surveyors an opportunity to render services under equally satisfactory conditions and terms afforded other professions, insuring equity in accord with equality. (e) Promoting social and individual economic welfare through balanced consumption, production and distribution systems, methods and practices. The Institute has not fared well since the 1929 depression and petitioner has underwritten *32 its expenses ever since then. Petitioner prepares and issues articles and news releases to the members of the Institute and conducts its meetings. The membership paid the following amounts as dues to petitioner during the years in issue: Amount
Year
Received
1957
$1,426.70
1958
1,353.67
1959
1,424.61
Petitioner, as executive secretary of the Institute, conducts the organization so as to advance surveying generally and raise the status of those engaged in this work to a professional level. Petitioner is also the coordinator of research for the Economic Welfare Council (hereafter called Council). The Council was founded in Philadelphia, Pennsylvania, in 1956. It is composed of approximately 25 active and honorary members whose views on economics coincide with those of petitioner, who is the organization's sole official. The Council sponsors regional meetings, usually on an annual basis, the attendance at which is generally between 50 and 75 persons. The Council's purposes, aims, and objectives, in the words of its charter, are as follows: Article II - PURPOSE THE DEVELOPMENT, promotion and establishment of Economic Order by maintaining a natural and *33 normal balance between income from land and other natural resources, materials, labor and capital through free competition, cooperation and coordination of all factions and factors. Article III - AIM IMPROVING the Economic Welfare of Mankind through application of justice based on truth and right in fact. Article IV - OBJECTIVE CREATING a condition of lasting Peace, Progress and Prosperity by establishing an autonomous, cooperative commonwealth for the people of all states and countries through freedom of opportunity for enterprise and initiative to achieve individual sovereignty, contentment and happiness. In furtherance of his desire to develop and promote his views and convictions regarding the "economic order," petitioner prepares and issues articles and releases for the avowed purpose of educating others about his economic policies and ideas. In writing these materials, petitioner uses his own name as well as the Council's and that of the University of Economics Foundation (hereafter called Foundation). These articles are sent free of charge to those individuals the petitioner considers interested in his economic theories. At various times the petitioner has been asked *34 to supply additional copies of certain releases previously issued. He either sends them free or charges, at his discretion, 10 cents per copy to defray printing and mailing costs. The total receipts from these charges were as follows: Amount
Year
Received
1957
$70.50
1958
60.00
1959
22.00 The receipts from the dissemination of such materials during the years not involved herein were substantially similar in amount to those set forth above for 1957, 1958, and 1959. The following is a partial list of the titles of the articles and releases written and published by the petitioner: Release
Number
Title
10
Solution for Peace in the Atomic Age
12
Communism, Capitalism or Cooperation
13
Specification for a Better World
14
Dividends Instead of Wages
20
Subsidized Subordination
30
Ethics, Mathematics and Economics
32
Prosperity without War
36
Balancing Atomics with Autonomics
45
The Four Blind Spots
54
100 Million Jobs in the U.S.A.
56
The People Incorporated - Universal
Sharing System
Petitioner's expenditures in the preparation and distribution of the articles and releases under his own name and that of the Council, *35 Foundation, and Institute, together with his activities in connection with the operation of the above organizations, comprise all the expenses and deductions taken in Schedule C of his Federal income tax returns for each of the years 1957, 1958, and 1959, totaling $17,336, $16,413, and $8,073, respectively. These expenses are similar in amount to the expenses incurred for like activities during years not herein involved. Ultimate Findings During the years in issue the petitioner endeavored to enhance the status of construction surveying and promote his economic ideas through the facilities of the Council and the Institute respectively. His expenditures in this regard were made in furtherance of his personal beliefs and not to earn a profit from the dues and sales they produced. Opinion Respondent does not suggest that the amounts claimed by petitioner as trade or business expenses were not incurred in the manner indicated. Rather, he contends that the petitioner has failed to show that such expenditures were made in carrying on a trade or business.[1] We agree. The issue is factual. Theodore Sabelis, 37 T.C. 1058 (1962). The record before us indicates that petitioner *36 conducted the Council and Institute as forums from which he could disseminate his personal beliefs on surveying and economics rather than businesses engaged in for profit. See Lamont v. Commissioner, 339 F. 2d 377, (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. This is borne out by petitioner's failure to consistently charge customers the stated sales prices of his articles and releases and especially by the unusually large expenditures made to produce negligible profits. Morton v. Commissioner, 174 F. 2d 302 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court, Henry P. White, 23 T.C. 90 (1954), affirmed per curiam 227 F. 2d 779 (C.A. 6, 1955). The evidence shows that petitioner's expenses from these activities have consistently exceeded the income he received therefrom by more than 10 to 1 for a number of years, both before and after those in controversy. The facts here bear *37 a striking resemblance to those in the Lamont case. Lamont was a teacher, writer, publisher, and lecturer who attempted to offset his consistent [2] losses from these activities against substantial investment income. In affirming our finding that Lamont was not engaged in a trade or business, the Court of Appeals said: "Lamont's desire for profit, if at all present, was certainly de minimis * * *." Petitioner's argument that his eventual success as an industrial economist will ultimately bring him monetary reward while also protecting his occupation in the construction field by preventing another economic depression constitutes no more than "a de minimis hope or expectation of profit," and this has long been held insufficient to meet the requirements of the statute. James M. Osborn, 3 T.C. 603 (1944). Whatever possibility of profit the petitioner foresees for his work is so ill defined [3] that we cannot accept it, in view of the evidence to the contrary, as sufficient to establish his intent to earn a profit. Frederick A. Purdy, 12 T.C. 888 (1949). *38 We have considered the petitioner's brief. We do not doubt his intentions, nor do we impugn his goals. He impressed us as an honest and sincere individual who is deeply interested in the economic and social problems of our times. Unfortunately, however, loftiness of purpose is not a criterion by which we may decide whether his activities constitute a business. James M. Osborn, supra. Respondent states in his brief that, if we find for him on this issue, he concedes that the disallowance of the expenses should be limited to the excess of disallowed deductions over the reported receipts from that source. To give effect to the concessions and the settled issue. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -↩
2. The facts in the Lamont case are even stronger than those before use here, for Lamont was able to show that his activities produced small profits in 2 of the 12 years preceding the year in issue. ↩
3. THE COURT: But will the Economic Welfare Council ever make for you a profit? THE WITNESS: I think it will. THE COURT: Because of your work? THE WITNESS: I think it will, not as the Economic Welfare Council or the Construction Surveyors Institute, because the reward there - they are non-profit activities.↩