Louis H. Porter v. Commissioner.
Porter v. Commissioner
Docket No. 1720-68.
United States Tax Court
T.C. Memo 1969-288; 1969 Tax Ct. Memo LEXIS 2; 28 T.C.M. (CCH) 1489; T.C.M. (RIA) 69288; December 29, 1969, Filed *2 Louis H. Porter, pro se, New Canaan, Connecticut. Wallace Musoff, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1964, 1965, and 1966 in the amounts of $289.78, $488.65, and $1,102.80, respectively. The only issue for decision is whether petitioner was engaged in carrying 1490 on a trade or business as an artist so that certain expenses incurred during the taxable years are deductible as business expenses under section 162(a). [1]
Findings of Fact Petitioner was a legal resident of New Canaan, Connecticut, at the time his petition was filed. He filed his individual income tax returns for 1964 through 1966 with the district director of internal revenue at Hartford, Connecticut. Petitioner was born on December 19, 1904. He attended Yale University, was elected to Phi Beta Kappa, and was graduated with a Bachelor of Arts degree in 1927. Thereupon he entered Columbia Law School, was graduated with a Bachelor of Laws degree, and was admitted to the New York bar in 1931. *3 Shortly after graduation from law school he entered his father's law office, where he worked until November 1932. Petitioner was not happy in the practice of law, and in 1931 he began the study of art on a part-time basis at the Art Student's League in New York City. At this time he studied expressionistic painting under a distinguished teacher. From that time until 1939 he left his law practice on several occasions to study art, once for almost a year in Paris. He was married in 1936 and permanently left the practice of law three years later. At that time he moved to a farm in Connecticut, which he had acquired in 1938, supporting himself and his wife on an allowance of $2,100 given to him by his father and devoting himself exclusively to art. In the fall of 1939 petitioner participated in his first art exhibit, which was held at the Denver Art Museum. At this exhibit he sold one pen and ink drawing for $20. At or about the same time he sold six or seven paintings to various relatives. During the winters of 1939-1940 and 1940-1941 petitioner studied the classical tradition of underpainting, the painting technique of the old masters, and the abstract school of painting at the Art Student's *4 League. In 1941 he converted a barn located on his Connecticut farm into a gallery where he exhibited his paintings. Petitioner also invited other artists in the area to hang paintings in the gallery, and he conducted several art shows there. Although the shows were reviewed in the local newspapers, petitioner sold none of his paintings through the gallery. The gallery was closed at the beginning of World War II. In the spring of 1941 a daughter was born to petitioner and his wife. When his wife's health failed three months later, petitioner took charge of rearing his daughter, and this curtailed his art activity. In 1943 petitioner sold the Connecticut farm and bought a residence in the town of New Canaan, Connecticut. He chose to live in New Canaan because it was the home of a professional art guild which assisted local artists. He became a member of the guild by submitting art work to its board of directors, and later became a member of the board. Shortly after he moved to New Canaan his wife's health so deteriorated that she entered a sanitarium. In early 1946 petitioner's father died, and petitioner's allowance was discontinued. To compensate for the termination of the allowance, *5 he rented out the home in New Canaan and moved into a cottage he built on the corner of his lot. Six months later his mother died, leaving him the income of a trust fund which was sufficient to alleviate his financial woes. During the period from 1943 through 1947 petitioner concentrated on synthesizing his previous studies of the schools of abstract and expressionistic painting. However, he did not sell any of his paintings. In 1947 he and his wife were divorced. In the fall of 1948 petitioner presented a one-man exhibition of his paintings at a gallery in New York City and sold a painting to an acquaintance for $150. During the 1950s petitioner extensively studied Picasso but did not exhibit any of his own paintings. In 1962 he had an unreviewed showing at a private school in Connecticut. From 1961 through the tax years petitioner made repeated efforts to secure a one-man showing in New York City, with the objective of establishing a reputation as an accomplished artist. He subscribed to a magazine containing the names of art galleries in the city and went to selected galleries about once a month, seeking an appointment to exhibit his paintings. However, the New York galleries had *6 become less interested after 1960 in showing paintings of the expressionistic school (in 1491 which school petitioner places his style), [2] *7 and consequently he was unable to secure a showing there. In 1965 and again in 1967 he went to London to attempt to arrange a one-man exhibition in a gallery in that city. Such an exhibition was arranged for the fall of 1969. Petitioner customarily began his painting activities at 5 o'clock in the morning, continuing until 4:30 in the afternoon. Prior to 1965 petitioner produced approximately 25 paintings a year. Thereafter his output increased: 84 paintings in 1965 and 172 in 1966. Petitioner had on hand at the time of trial over 1,000 paintings which he had produced. In the period from 1950 through 1966 petitioner made the following sales of his paintings: Year
Number ofSales
Purchaser
SalesPrice
1950
1
Phillips Gallery, Washington, D.C.
$ 150
1962
1
Non-acquaintance
50
1963
1
Acquaintance
Unknown
1966
1
Acquaintance
100
1
Acquaintance of daughter
300
Total
$600
Petitioner's *8 income during the tax years was derived principally from the trust fund established by his mother and from dividends, interest, and rent. His income tax returns for 1964, 1965, and 1966 showed income in the following respective amounts: $21,634.80, $21,701.99, and $19,591.48. He claimed deductions in connection with his painting activities during this period as follows: 1964
1965
1966
Paint
$212.99
$ 502.04
$ 867.63
Canvas, frames, etc.
139.98
519.68
1,174.42
Studio (1/6 of his house)
163.67
167.73
206.74
Car (1/3 use) *
344.38
234.78
572.17
Miscellaneous
259.30
Total
$861.02
$1,424.23
$3,080.26 Respondent disallowed these deductions, determining that they were not incurred in a trade or business or in a transaction entered into for a profit. Ultimate Finding of Fact During 1964 through 1966 petitioner was not engaged in carrying on a trade or business as an artist. Opinion The expenses incurred by petitioner in connection with his painting are deductible under section 162(a) [2] only if they were incurred in the carrying on of a trade or business. In order for his painting endeavors to be characterized as a trade or business, petitioner must show that he engaged in them with a good faith *9 intent to realize a 1492 profit therefrom. Lamont v. Commissioner, 339 F. 2d 377, 380 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. Whether petitioner had the requisite intent must be determined from an examination of all the facts and circumstances of the case. Hirsch v. Commissioner, 315 F. 2d 731, 737 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; Margit Sigray Bessenyey, 45 T.C. 261, 274 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967). A primary factor in establishing such intent is the bona fide expectation of profit. Petitioner admits that his motive for painting was to give mankind a better vision of beauty and to establish for himself a reputation as a great artist. Nevertheless, he maintains that sales of his paintings were essential to the accomplishment of these objectives and that he expected to sell them some day at a profit, thereby establishing his reputation and, in turn, creating a greater demand for his works. *10 Relying on Doggett v. Burnet, 65 F. 2d 191 (C.A.D.C., 1933), he further contends that his expectation of profit need not be reasonable. However, in deciding this factual issue, we are not required to close our eyes to the objective facts. Although there is no requirement that the activities produce an immediate profit, Theodore Sabelis, 37 T.C. 1058 (1962), a very long history of losses - here for over 30 years - bears heavily against finding a bona fide expectation of profit. Henry P. White,, 23 T.C. 90, 94 (1954), affirmed per curiam 227 F. 2d 779 (C.A. 6, 1956), certiorari denied 351 U.S. 939 (1956). Petitioner points to his efforts over a period of 30 years to sell his paintings - an art exhibit in 1939 at the Denver Art Museum conversion of his barn in 1941 into an art gallery, a one-man showing in 1948 at a gallery in New York City, unsuccessful attempts in 1961 and succeeding years to arrange another one-man showing in New York, and the signing of a contract in 1967 for a one-man exhibition in London - as evidence of his good faith intent to make a profit. Nevertheless, petitioner has sold only 12 or 13 paintings (only three of which were not sold to members of his family or *11 family friends and acquaintances) and he received only $600 from all sales from 1950 through 1966 (while his claimed deductions for 1964 through 1966 alone totaled $5,365.51). [3] These facts, along with the long history of his expenditures, the large disproportion between such expenditures and his sporadic receipts, his independent wealth, and his stated motive of giving mankind a better vision of beauty, lead us to conclude that petitioner did not have a bona fide expectation that he would ever realize a profit from his painting, [4] *12 certainly not within the foreseeable future. Neither respondent nor this Court disputes petitioner's exclusive and, no doubt, sincere dedication to art for over 30 years. But we cannot accept his contention that such dedication and accompanying struggles show that his activities did not constitute a hobby or were not undertaken merely for pleasure. "The gratification derived from an occupation worth doing, possibly beneficial to others and probably requiring long hours of arduous labor, must still not be confused with an intention to return a profit." Henry P. White, supra at 94. Decision will be entered for the respondent. 1493 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Petitioner requested the following findings to describe his style of painting: Petitioner * * * takes the human figure and synthesizes it into as few as two meaningful flat shapes. This is the main problem that petitioner has sweated over for the last twenty years and the result of this accomplishment is that now he has an enormous power of relating the area of the figure to the total area of the rectangle wherever he wants to use it. * * * He then places the figure not on the surface of the canvas, * * * but now rather as a division of the rectangle and in that way petitioner can retain in the figure the sense of the infinite which he started his canvas with. Petitioner now and has for some years developed the rest of the picture not occupied by the figure with a series of concentric circles, which thus gives form to the vastness of space petitioner then in the areas so constructed both of the figure and the circles puts color on as pure, flat, opaque color for each color area so that each color area as a color pushes against each other color area in a way which plasticly * * * gives total tension to the picture as if it were breathing. * * * He means by the plastic relation of color that color in art has really two functions: first, it is decorative; and second, color as distinct from the paint itself has a sense of pull, one color towards another, thus creating a kind of color pressure which petitioner calls the plastic relation of color.↩
*. 1/2 use in 1966.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *↩
3. Petitioner's suggestion that, in determining whether he had a good faith intent to make a profit, the absence of sales is balanced by the increase in the number of his paintings is without merit. Sebastian de Grazia, T.C. Memo. 1962-296↩, relied on by petitioner, is clearly distinguishable - the taxpayer there had enjoyed steadily increasing receipts in earlier years from her paintings and already had an established reputation. She deliberately did not sell any paintings in the tax year in order to augment her inventory of paintings for more exhibits.
4. Petitioner's hope for an instant reputation from a one-man exhibition to be held in London in the fall of 1969 must be considered in the light of the results of his earlier one-man showing held in New York City in 1948.