Johan A. Louw and Aleida G. Louw v. Commissioner.
Louw v. Commissioner
Docket No. 5164-69.
United States Tax Court
T.C. Memo 1971-326; 1971 Tax Ct. Memo LEXIS 7; 30 T.C.M. (CCH) 1421; T.C.M. (RIA) 71326; December 27, 1971, Filed. Johan A. Louw, pro se, 1 Court St., Boston, Mass.Norman H. McNeil and Alan R. Herson, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1966 in the amount of $573.50. The sole issue is whether certain expenses were incurred by petitioner Johan A. Louw during 1966 in the trade or business of being an inventor and are thus deductible under section 174. [1]
Findings of Fact Johan A. Louw (hereinafter referred to as petitioner) and Aleida G. Louw, husband *8 and wife, were legal residents of Orange, California, at the time they filed their petition. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Los Angeles, California. Petitioner, a native of Holland, received a degree in mechanical engineering from Academy Minerva in Groningen, Holland, in 1944. After his graduation, he operated his own die casting business in Holland for about 5 or 6 years. In this business, he invented several machines for making small die cast products, but he did not apply for patents on such machines. He then worked for a period of about 6 years as a mechanical engineer for various Dutch companies. In this work, he developed some mechanical inventions for his employers; however, he received no special remuneration for these inventions, and he had no proprietary interest in them. While in Holland, petitioner on his own behalf filed two patent applications: one relating to the manufacture of a plastic zipper, 1422 and the other pertaining to a rubber spring. The applications were abandoned because petitioner lacked the funds required to pursue them. In 1956, petitioner immigrated to the United States. *9 In this country, he was first employed as the chief engineer for a Nebraska company. He remained at this job until 1959 when he moved to California and took a job as an engineer with Townsend Company. For his Nebraska employer, petitioner developed a series of machines designed to manufacture chains for use on farm equipment; these machines were not patented. For Townsend, petitioner developed machines and processes for manufacturing aircraft fasteners. In connection with one of these, a machine for manufacturing bimetallic titanium rivets, his employer has filed three patent applications. Since immigrating to the United States, petitioner in his individual capacity has invented a throw-away plastic paint bag for use in connection with spray guns and a friction welder for pipelines. Without patenting these inventions, he attempted to market them to his employers and through a patent search service. For a fee, this service offered the inventions to prospective manufacturers. In the middle of 1965, petitioner started to work on a "Method and Apparatus for Saline Water Conversion." For the next 2 to 3 years, he devoted almost all his free time to this project; he worked on it during *10 evenings, weekends, and vacations. The time devoted to this work averaged about 25 hours per week. Since 1968 or 1969, petitioner has devoted about 5 to 10 hours per week to his inventive activities. During 1966, he hired a patent attorney to help him make and perfect a patent application on the desalination apparatus. On May 2, 1966, petitioner filed a claim for a patent, and it was granted on April 22, 1969. After he filed his patent application, petitioner attempted to interest his employer, Townsend, in the development of the desalination apparatus. Petitioner estimated that a prototype of the apparatus would cost several hundred thousand dollars to construct. Townsend had the patent evaluated by two experts in the field, and they arrived at somewhat conflicting conclusions as to its economic and engineering feasibility. Both agreed, however, that certain basic assumptions employed in designing the apparatus should be xperimentally verified, and, according to available estimates, this would cost a sum in excess of $50,000. Petitioner also attempted to interest Fluor Corporation in further development of the apparatus. Neither company thus far has been willing to make the required *11 investment, and, at the time of the trial, petitioner had realized nothing from this invention. During 1966, petitioner incurred the following costs in developing his patent on the desalination method and apparatus: Patent attorneys
$2,473.00
Technical books
72.00
Patent copies 24.00
Total
$2,569.00 He claimed these expenses as deductions in his return for that year. Respondent determined that these expenses were not incurred in petitioner's trade or business and disallowed them in their entirety. Opinion Section 174(a)(1) [2] lays down a general rule that "research or experimental expenditures" which are paid or incurred during the taxable year in connection with a "trade or business," at the election of the taxpayer, may be treated as expenses not chargeable to the capital account and may be deducted in such taxable year. Respondent does not deny that petitioner made the disputed outlays for attorney's fees, technical books, and copies of patents, that such outlays constitute research or experimental expenditures within the meaning of the section, or that the requisite election has been made. The only issue is a narrow, factual one - whether these expenditures *12 were paid or incurred in connection with a "trade or business." We hold that petitioner's inventive activities constitute a trade or business and that the disputed expenses are deductible. During the tax year, petitioner was employed as an engineer for the Townsend Company, but one may engage in more than one business. And the exploitation of inventions through royalties, sales of patents, or otherwise may 1423 constitute a business. Cf. Harold T. Avery, 47 B.T.A. 538 (1942). While the evidence may not be as strong here as in some cases, we are on the whole satisfied that petitioner's inventive activities were of sufficiently sustained character to qualify as engaging in the trade or business of an inventor. Petitioner's entire career, both in Holland and in this country, has involved *13 inventive activities. Most of his inventions have been made in his capacity as an employee, but he has also devoted his time regularly and continuously to free-lance inventive work for several years. After coming to this country, his inventions in his individual capacity include the throw-away plastic paint bag and the friction welder for pipelines. His devotion of an average of 25 hours per week from 1965 through 1967 and 5 to 10 hours per week during 1968 and 1969 to his work on the saline water conversion apparatus constitutes the kind of regular, continuous, and extensive activity which normally characterizes a business. True, petitioner has not yet received any income from the inventions conceived by him, but we are convinced that he engaged in his inventing activities with the intention and expectation of making a profit. Cf. Lamont v. Commissioner, 339 F. 2d 377, 380 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court; Hirsch v. Commissioner, 315 F. 2d 731, 736 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. He has pursued these activities in a businesslike manner. He has sought to market his desalination apparatus and other *14 inventions both through direct contracts with prospective manufacturers and through a patent search service. This is the kind of business which may take time to produce a profit but which ultimately may provide a handsome return. "If pleasure was the only incentive and recompense sought by the petitioner in developing his mechanical ideas, there was no necessity to go to the trouble and expense of procuring patents." Harold T. Avery, supra at 541-542. And there was even less reason for attempting to market them. Respondent's reliance upon John F. Koons, 35 T.C. 1092 (1961), is misplaced. In that case, the Court found that the taxpayer was preparing to enter a business which would commercially exploit a patent so that the costs of developing the patent were not currently deductible. Petitioner's inventive activities, in contrast, involve the making of inventions rather than putting them to commercial use. He has never had an expectation of manufacturing or producing the desalination apparatuses which would cost several hundred thousand dollars each. His purpose has been to sell, lease, or license the patent or design to others so that they may produce the *15 machines. Petitioner is not merely preparing to enter a business; he is already engaged in it. On consideration of the whole record, we think petitioner has shown that he is entitled to the claimed deductions. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.↩
2. SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses. - (1) In General. - A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.↩