SAMUEL YANOW AND RESHELA YANOW, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4326–63, 5279–63. Filed June 24, 1965.

*Herbert L. Zuckerman,* for the petitioners.
*Lawrence Goldfein,* for the respondent.

TRAIN, *Judge:* Respondent determined the following deficiencies in the income tax of the petitioners:

| Year | Deficiency |
|------|------------|
| 1959 | $1, 542. 88 |
| 1960 | 1, 478. 34 |
| 1961 | 1, 396. 11 |

In docket No. 4326–63 the petitioners assigned no error with respect to respondent's determination in the notice of deficiency dated June 28, 1963, relating to constructive dividends in the years 1959 and 1960.

The only issue for decision is whether the petitioner Samuel Yanow is entitled under the provisions of section 167(a), Internal Revenue Code of 1954,[1] to deductions for depreciation of properties owned by him and rented to his controlled corporations for less than their fair rental values.

### FINDINGS OF FACT

Most of the facts have been stipulated and are hereby found accordingly.

Samuel and Reshela Yanow are husband and wife who reside at 519 Seven Oaks Road, Orange, N.J. They filed their joint Federal income tax returns for the years 1959, 1960, and 1961 with the district director of internal revenue at Newark, N.J.

Samuel Yanow (hereinafter called petitioner) was the president of both Montclair Plumbing Supply Co. and Montclair Plumbing Supply Co. of Kearny and was assistant secretary of Montclair Plumbing Supply Co. of Rockaway during the years 1959 through 1961. The common stock ownership of these three corporations during such years was as follows:

*Montclair Plumbing Supply Co.*

| | Shares |
|------|------|
| Petitioner | 60 |
| Ralph Yanow | 20 |
| Jack and Ruth Eisenberg | 10 |
| Treasury | 10 |
| Total | 100 |

*Montclair Plumbing Supply Co. of Kearny*

| | |
|------|------|
| Montclair Plumbing Supply Co | 50 |
| Jack and Ruth Eisenberg | 15 |
| Total | 65 |

*Montclair Plumbing Supply Co. of Rockaway*

| | |
|------|------|
| Jack and Ruth Eisenberg | 21 |
| Ralph Yanow | 21 |
| Total | 42 |

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

Ralph Yanow is the son of petitioner, and Jack and Ruth Eisenberg are the son-in-law and daughter, respectively, of petitioner. The shares of stock listed above constitute the only stock authorized and issued by the corporations.

All three corporations are on a calendar year and on the accrual basis, and they are engaged in the plumbing and heating supply business.

During the years 1959 through 1961 petitioner received the following salaries from the corporations:

|  | 1959 | 1960 | 1961 |
|---|---|---|---|
| Montclair Plumbing Supply Co. | $13,250 | $13,000 | $13,000 |
| Montclair Plumbing Supply Co. of Kearny | 15,000 | 15,000 | 15,600 |
| Montclair Plumbing Supply Co. of Rockaway | None | None | None |

With the exception of interest received on savings accounts, petitioner's sole source of income was from salaries paid to him by his Montclair and Kearny corporations.

### 19 Elm Street Property

In 1950 petitioner acquired title in his own name to real property consisting of a parcel of land and a building located on 19 Elm Street in Montclair, N.J. For some years prior to 1950 the property was owned by a partnership in which petitioner was a partner. That partnership was terminated in 1950. From the time petitioner acquired the property in 1950 through the years in issue, he has leased it to Montclair Plumbing Supply Co.

The 19 Elm Street building is a one-story cinder-block structure with office and salesroom occupying the front part of the building and storage facilities in the rear. The building has a 68.5-foot frontage and a depth of 178 feet. It is an irregular L-shaped structure and has a side driveway which is used for loading and unloading plumbing supplies. A storage wing occupies the rear part of the property at the end of the driveway. The building is built adjacent to the sidewalk line and is in a business location that is suitable for warehousing and distributing. It is about one block south of Bloomfield Avenue, the main commercial street of Montclair. The building has a total area of approximately 13,000 square feet.

The lease for the 19 Elm Street property was oral and terminable at the will of either the lessor (petitioner) or lessee (Montclair Plumbing Supply Co.). It provided that the rental would be equal to the real estate taxes due on the property and that the amount of such rental was to be paid either directly to the lessor or to the taxing authorities on behalf of the lessor.

The total real estate taxes on the 19 Elm Street property and the total rental paid under the oral lease of such property were as follows during the years in issue:

|  | 1959 | 1960 | 1961 |
|---|---|---|---|
| Real estate taxes | $1,908.20 | $1,912.90 | $2,082.10 |
| Total rental | 1,908.20 | 1,912.90 | 2,082.10 |

For each of the years 1959, 1960, and 1961 petitioner did not report in his income tax returns the rental set forth above or deduct an equivalent amount of real estate taxes paid by him or paid on his behalf by Montclair Plumbing Supply Co.

However, in his income tax returns for each of the years 1959, 1960, and 1961 petitioner claimed depreciation in the amount of $765 on the 19 Elm Street property, which resulted in a net loss of $765 claimed by him for each of these years.

For the years 1950 through 1958 the rental received by petitioner from Montclair Plumbing Supply Co. on the 19 Elm Street property was also equal to the real estate taxes on the property, and a net loss was claimed by him on returns for those years in the amount of the depreciation claimed in each year.

Maintenance and repair expenses, if any, on the 19 Elm Street property were to be paid by Montclair Plumbing Supply Co. since those expenses were considered an obligation ordinarily assumed by a tenant under a net oral lease. No evidence was presented as to the extent of any such expenses during the years 1959 through 1961.

### 635 Devon Street Property

Also in 1950 petitioner acquired title in his own name to real property, consisting of a parcel of land and a building located on 635 Devon Street in Kearny, N.J. Prior to 1950 this property had also been owned by the partnership in which petitioner was a partner. From 1951 through the years in issue, petitioner has leased the property to Montclair Plumbing Supply Co. of Kearny.

The building on 635 Devon Street is a one-story cement-block warehouse-storage type structure. There are middle income residential buildings in the area of the property as well as small warehouse type structures. The building has been used solely for storage of plumbing supplies. There is a side driveway and a loading dock used by trucks for loading and unloading supplies. The main part of the building has dimensions of approximately 25 by 100 feet or approximately 2,500 square feet. Storage facilities at the end of the side driveway occupy approximately 500 square feet. The total area of usable space is approximately 3,000 square feet.

The lease for the 635 Devon Street property was oral and terminable at the will of either the lessor (petitioner) or lessee (Montclair Plumbing Supply Co. of Kearny). It provided that the rental would be equal to the real estate taxes due on the property and that the amount of such rental was to be paid either directly to the lessor or to the taxing authorities on behalf of the lessor.

The total real estate taxes on the 635 Devon Street property and the total rental paid under the oral lease of such property were as follows during the years in issue:

|  | 1959 | 1960 | 1961 |
|---|---|---|---|
| Real estate taxes | $549.52 | $545 | $509.85 |
| Total rental | 549.52 | 545 | 509.85 |

For each of the years 1959, 1960, and 1961 petitioner did not report in his income tax returns the rental set forth above or deduct an equivalent amount of real estate taxes paid by him or paid on his behalf by Montclair Plumbing Supply Co. of Kearny.

However, in his income tax returns for each of the years 1959, 1960, and 1961 petitioner claimed depreciation in the amount of $213 on the 635 Devon Street property, which resulted in the net loss of $213 claimed by him for each of these years.

For the years 1951 through 1958, the rental received by petitioner from Montclair Plumbing Supply Co. of Kearny on the 635 Devon Street property was also equal to the real estate taxes on the property, and a net loss was also claimed by him on returns for those years in the amount of depreciation claimed in each year.

Maintenance and repair expenses, if any, on the 635 Devon Street property were to be paid by Montclair Plumbing Supply Co. of Kearny since those expenses were considered an obligation ordinarily assumed by a tenant under a net oral lease. No evidence was presented as to the extent of any such expenses during the years 1959 through 1961.

### 100 Route 46 Property

In June 1958, petitioner acquired title in his own name to real property, consisting of a parcel of land and a building located on 100 Route 46 in Rockaway, N.J. From January 1, 1959, through the years in issue, petitioner has leased the property to Montclair Plumbing Supply Co. of Rockaway.

The building on 100 Route 46 is a one-story cinder-block structure. The front part of the building is occupied by offices and salesroom and the rear area is used for storage purposes. The building is approximately 73 feet 6 inches by 90 feet or approximately 6,600 square feet in area. The parcel on which the building is located is approximately

137 by 250 feet. The structure is set back about 20 feet from the highway and is surrounded by a paved parking area.

The lease for the 100 Route 46 property was an oral one, terminable at the will of either the lessor (petitioner) or lessee (Montclair Plumbing Supply Co. of Rockaway). The lease provided that the rental would be equal to the real estate taxes due on the property plus the interest on a loan petitioner had taken out in order to obtain funds to improve the 100 Route 46 property. The amount of such rental was to be paid either directly to the lessor or to the taxing authorities and lender of the aforementioned funds borrowed by petitioner.

The total real estate taxes on the 100 Route 46 property and the total interest on the loan as well as the total rental paid under the oral lease of said property were as follows during the years in issue:

|  | 1959 | 1960 | 1961 |
|---|---|---|---|
| Real estate taxes | $2,058.24 | $1,409.34 | $1,798.92 |
| Interest | 1,125.00 | 2,047.50 | 1,912.50 |
| Total rental | 3,183.24 | 3,456.84 | 3,711.42 |

For each of the years 1959 and 1961 petitioner did not report in his income tax returns the rental set forth above or deduct an equivalent amount of interest and real estate taxes paid by him or paid on his behalf by Montclair Plumbing Supply Co. of Rockaway. For the year 1960 petitioner reported rental of $3,456.84 and deducted real estate taxes of $1,409.34 and interest of $2,047.50.

However, in his income tax returns for each of the years 1959, 1960, and 1961, petitioner claimed depreciation in the respective amounts of $2,619.00, $2,460.00, and $2,314.00 on the 100 Route 46 property, which resulted in the net losses of $2,619.00, $2,460.00 and $2,314.00 claimed by him for each of these years.

Maintenance and repair expenses, if any, on the 100 Route 46 property, were to be paid by Montclair Plumbing Supply Co. of Rockaway since those expenses were considered an obligation ordinarily assumed by a tenant under a net oral lease. No evidence was presented as to the extent of any such expenses during the years 1959 through 1961.

The properties located at 19 Elm Street, 635 Devon Street, and 100 Route 46 were used by Montclair Plumbing Supply Co., Montclair Plumbing Supply Co. of Kearny, and Montclair Plumbing Supply Co. of Rockaway for all years in issue for their own respective business purpose. The properties were not held for personal use by petitioner.

For all years 1950 through 1961, the fair rental values of the 19 Elm Street, the 635 Devon Street, and the 100 Route 46 properties exceeded

450

the total of the rental (real estate taxes and, as to 100 Route 46, interest) for each of those years plus the depreciation claimed in those years plus the value, if any, of all other obligations ordinarily assumed by a tenant under an oral lease. The term "fair rental value" means the rental that would have been paid had petitioner dealt at arm's length with a tenant who was a stranger. No attempt was ever made by petitioner to rent or sell to the general public any of the three properties.

The rentals paid by the three corporations for their use of the properties were nominal when compared to their fair rental values.

For the years 1959 through 1961, Montclair Plumbing Co., Montclair Plumbing Supply Co. of Kearny, and Montclair Plumbing Supply Co. of Rockaway could have paid, without impairing their operations for such years, an increased rental to petitioner for their use of the three properties, at least to the extent of the depreciation claimed by petitioner.

ULTIMATE FINDINGS

1. Petitioner did not realize, or expect to realize, a pecuniary gain from the leasing transactions with the corporations. He entered into the transactions knowing that he would suffer economic losses but that the corporations would benefit from the nominal rentals charged.

2. The properties owned by petitioner were not used in his trade or business and were not held for the production of income.

OPINION

Petitioner is entitled to the claimed depreciation deductions under the provisions of section 167(a)[2] only if he held the commercial properties here involved for use in his own trade or business or for the production of income.[3] His contention is that he meets the requirements of both sections 167(a)(1) and 167(a)(2).

It is now well settled that the allowance of deductions does not turn upon equitable considerations but depends on legislative grace. *Deputy* v. *duPont*, 308 U.S. 488 (1940). The deductions must be "plainly authorized." *Commissioner* v. *Swent*, 155 F. 2d 513, 517 (C.A. 4, 1946). In case of doubt, a deduction statute is to be construed against the one claiming under it, notwithstanding the resolu-

---

[2] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or
(2) of property held for the production of income.

[3] Petitioner concedes that the excess of depreciation over rental income is not allowable as a loss under sec. 165.

tion of the doubt may work a disadvantage to the taxpayer. *White* v. *United States*, 305 U.S. 281 (1938). Thus the burden is squarely upon the taxpayer to bring himself clearly within the statutory provisions authorizing the claimed deduction. *Belser* v. *Commissioner*, 174 F. 2d 386 (C.A. 4, 1949).

The first argument advanced by petitioner is to the effect that his purpose was "genuinely business." In support thereof he contends that the cash positions of the corporations were not adequate, that tax avoidance was not considered, that the corporations had inherited the plumbing supply business from a partnership in which he had been a partner, and that the payment of additional rentals would have affected the salaries drawn by him.

We agree that petitioner was in the business of being an executive for corporations engaged in the plumbing supply business and that a corporate employee is in the trade or business of rendering services for a salary. *Folker* v. *Johnson*, 230 F. 2d 906 (C.A. 2, 1956). However, we cannot conclude, as petitioner urges us to do, that he was also in the *same business* as the corporations which employed him and that he held the properties in *his own business*. After 1950 petitioner was not in the plumbing supply business as an individual or as a partner; nor did he hold the properties for use in his business as a corporate executive.

To qualify as a "trade or business" within the purview of the statute, petitioner's rental activities must have been entered into and carried on in good faith for the purpose of making a profit. It is the expectation of gain that is important. The operation need not produce a profit, but it must be of such a nature that the taxpayer can reasonably expect one. *Doggett* v. *Burnet*, 65 F. 2d 191, 194 (C.A.D.C. 1933), and *Henry P. White*, 23 T.C. 90 (1954), affirmed per curiam 227 F. 2d 779 (C.A. 6, 1955). In other words, were the petitioner's rental activities "engendered by the motive or intent of realizing profits"? *Lamont* v. *Commissioner*, 339 F. 2d 377 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. We think not.

For more than 10 years the petitioner did not expect, and did not in fact realize, an economic profit on the Montclair and Kearny properties, and from the time he acquired the Rockaway property he did not realize or contemplate a pecuniary gain from renting it.

Moreover, there is no merit to the contention that the properties were used in a "trade or business" simply because petitioner devoted his time and energies to the affairs of the corporations. Cf. *Whipple* v. *Commissioner*, 373 U.S. 193 (1963). And use by the corporations of these properties does not aid the petitioner since it is use in his own trade or business that controls.

Petitioner's reliance on *Trent* v. *Commissioner*, 291 F. 2d 669 (C.A. 2, 1961), reversing 34 T.C. 910 (1960), is misplaced. The *Trent* case offers no support for the proposition that the activities of a corporate executive and the corporation he serves should be combined. Nor does it lend support for combining the income realized by petitioner as salaries from the corporations with the rentals received from the properties. The defect in this position is the improper identification of petitioner's personal activities with the businesses of the corporations. See *Burnet* v. *Clark*, 287 U.S. 410 (1932), and *Noland* v. *Commissioner*, 269 F. 2d 108 (C.A. 4, 1959).

We are not persuaded by the evidence that the cash positions of the corporations were not adequate to permit the payment of greater rentals, especially in view of petitioner's testimony that increased rentals could have been paid without impairing the corporate operations. And there is no evidence that petitioner's employment with these corporations would have ended or his compensation would have been reduced if he had demanded a fair rental or if he had leased the properties to independent third parties.

Alternatively, the petitioner maintains that the properties were held by him for the "production of income," as that phrase is used in section 167(a)(2), thus entitling him to the claimed depreciation deductions. We disagree. We construe the statutory language to mean that property is held for the production of income only when it is being used for a profit-seeking purpose. Cf. *United States* v. *Gilmore*, 372 U.S. 39, 44–45 (1963), which discusses the legislative history of section 23(a)(2), the predecessor of section 167(a)(2). Although depreciation deductions have been allowed where little or no income has been realized by the owner, *William C. Horrmann*, 17 T.C. 903 (1951), no deduction for depreciation should, in our judgment, be allowed where an owner, who leases property, voluntarily agrees to forego a profit and proceeds in a manner deliberately designed to result in continued losses. To conclude otherwise, on such facts, would be incompatible with the spirit and purpose of the statute. The answer here depends primarily upon the petitioner's intent, which must be ascertained largely from his acts and conduct. *International Trading Co.* v. *Commissioner*, 275 F. 2d 578 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court. Viewing depreciation in the economic sense, the petitioner has continually incurred losses by renting the properties at less than fair rental. When we consider this along with the fact that petitioner has never attempted to rent the properties to outside parties in order to realize income, or even to minimize his losses, and has no intention of doing so, we are drawn irresistibly to the conclusion that the petitioner has never held the properties to produce income. If anything, the properties were held

for the *production of deductions* which, of course, does not meet the requirement of the statute. We think Congress did not intend to allow depreciation deductions under section 167(a)(2) where a taxpayer has voluntarily relinquished and contributed, indirectly to his controlled corporations, his right to receive a fair rental income from his properties.

Accordingly, the petitioner has not established to our satisfaction that he used the properties in his own trade or business or held them for the production of income.

*Decisions will be entered under Rule 50.*