PALLE BISTRUP AND KAREN BISTRUP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bistrup v. Commissioner
Docket No. 753-79.
United States Tax Court
T.C. Memo 1980-402; 1980 Tax Ct. Memo LEXIS 182; 40 T.C.M. (CCH) 1289; T.C.M. (RIA) 80402; September 18, 1980, Filed *182 Held: (1) Petitioners are not entitled to a depreciation deduction on an automobile owned by them but used exclusively by their corporation. (2) Deduction for certain claimed business expenses denied because the expenses were incurred while investigating the potential success of an unlaunched business venture. (3) Amount of income inuring to petitioners' benefit through their nonbusiness use of automobiles leased by their corporation determined. Palle Bistrup, pro se. Ronald P. Cambell, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: By letter dated November 1, 1978 respondent determined a deficiency of $2,853.11 in petitioners' 1976 Federal income taxes. Due to concessions the issues remaining for decision are: (1) whether petitioners are entitled to a depreciation deduction on an automobile owned by them and used exclusively by petitioners' corporation; (2) whether petitioners may deduct certain claimed employee business expenses and (3) the amount of income inuring to petitioners' benefit through their nonbusiness use of two automobiles leased by their corporation. FINDINGS OF FACT Some of the facts have been stipulated. These facts together with the exhibit attached thereto are incorporated herein by this reference. Petitioners Palle and Karen Bistrup resided in Virginia Beach, Virginia, at the time they filed their petition herein. A timely joint Federal income tax return for 1976 was filed by petitioners with the Internal Revenue Service Center, Memphis, Tennessee. Petitioners *184 and their three daughters own 51 percent of the stock of the U.S. Flag and Signal Company, Inc. (U.S. Flag). The corporation is a small company which manufactures flags and sells both flags and flagpoles. Palle Bistrup (hereinafter sometimes petitioner) was the general manager of the company and Karen Bistrup was its production manager. During 1976 petitioners launched an effort to increase company sales through the employment of an outside salesman. To this end, on April 1, 1976, petitioners, in their individual capacities, purchased a 1976 Plymouth Volare station wagon automobile (Volare). Petitioners' ownership of the Volare continued throughout the year in issue. The company paid for license fees, insurance and maintenance of the automobile. The Volare was used entirely for company business. Petitioners did not receive or report any cash rental payments on the lease of their automobile to U.S. Flag as petitioners did not intend to reap a direct profit on the leasing of their automobile. On their 1976 return petitioners deducted $1,024 representing the depreciation expense of the Volare station wagon. The bicentennial anniversary of our nation's independence created *185 an increased demand for flagpoles. Petitioners, as officers of U.S. Flag, were unable to secure a sufficient volume of flagpoles for sale. Consequently, petitioners entertained the idea of forming a new corporation, American Plastics, for the manufacture of fiberglass flagpoles. Petitioner Palle Bistrup consulted with the Small Business Administration (SBA) in Richmond to fully apprise himself of the potential success of such a venture. At the recommendation of the SBA, petitioner attended a symposium in Richmond to explore the new idea. The registration fee for the 3-day symposium was $126 and hotel expenses totalled $150. Additionally, petitioner learned that filament-wound fiberglass pipes, which vary only slightly in configuration from the flagpoles petitioner had envisioned, were in sharp demand in Europe, particularly in the oil industry. To study the possibility of combining the flagpole venture with an operation which would export fiberglass pipes, petitioner, at the suggestion of the SBA, subscribed to an export information service furnished by the United States Department of Commerce. Petitioner paid $100 in 1976 for the subscription.
On his 1976 income tax return *186 petitioner deducted the $100 subscription price and the $376 spent on the Richmond symposium as employee business expenses. In 1976 petitioners, in an effort to keep up with the demand for flags, worked long hours as officers of U.S. Flag. For their comfort petitioners purchased two office chairs to replace two older chairs and used the chairs exclusively for business in their office. Petitioners expended $988 for the two chairs which amount was deducted on their 1976 return as an employee business expense. During the entirety of 1976, U.S. Flag Leased a 1975 Plymouth Fury station wagon automobile (Fury) and a 1976 Chrysler sedan automobile (Chrysler). The corporation incurred costs of $2,959 for the rental and maintenance of the Fury and $4,348 for the Chrysler. Petitioners' personal use of the Chrysler amounted to 10 percent of its total use.The Fury was driven 6,000 miles in 1976. In addition to its use for hauling business equipment, the Fury was used for the personal purposes of petitioners. Among other personal purposes for which the automobile was utilized, petitioners used it five and sometimes six times a week to commute to their place of business which was 3.4 miles *187 from their residence.There were no bus lines traversing this 3.4 miles route. Maintaining the automobiles at petitioners' factory overnight entailed some risk of vandalism. Petitioners had the option of renting a parking place for their automobiles but decided against this alternative. In his notice of deficiency dated November 1, 1978, respondent determined that petitioners received taxable income $3,098 from U.S. Flag through petitioners' personal use of the two automobiles leased by the corporation. [1] Respondent also disallowed the $1,024 depreciation deduction claimed by petitioners on their Plymouth Volare automobile which was used by their corporation. Respondent further disallowed employee business expenses of $376 representing the expense of petitioners' efforts in launching a flagpole manufacturing business. Finally, petitioners' claimed deduction of $988 for the cost of two office chairs was denied by respondent in its entirety. *188 OPINION The first issue presented focuses on the propriety of petitioners' claimed depreciation deduction on a Plymouth Volare automobile owned by them and used exclusively for business by their corporation, U.S. Flag, with no cash rental fee exacted by petitioners. Section 167(a) [2] provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) of property used in the trade or business or of property held for the production of income. Petitioners argue that a depreciation deduction is allowable to them through the business use of the automobile by their corporation. Respondent asserts that the deduction is not allowable because the business of petitioners' corporation may not be viewed as the business of petitioners. Furthermore, respondent alleges that petitioners were not in the business of leasing automobiles nor was their Volare held for production of income. We hold for respondent on this issue. Generally, business expenses deductible *189 from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business. Section 1.162-1(a), Income Tax Regs. See Yanow v. Commissioner,44 T.C. 444, 451 (1965), affd. 358 F.2d 743 (3rd Cir. 1966). The business of a corporation of which the taxpayer is a shareholder is not the business of the taxpayer. Deputy v. Dupont,308 U.S. 488 (1940); Dalton v. Bowers,287 U.S. 404 (1932); Rollins v. Commissioner,276 F.2d 368, 370 (4th Cir. 1960), affg. 32 T.C. 604 (1959). Accordingly, we may not denominate the business of U.S. Flag as the business of petitioners. Petitioners, most certainly, were not in the business of leasing automobiles. The record does not reveal that petitioners ever engaged in another automobile leasing transaction. Furthermore, petitioners' arrangement with U.S. Flag did not dictate that petitioners receive any cash rental payments.U.S. Flag did pay the operating expenses of the automobile including the license fees and insurance. [3] While these payments could readily be construed as a rental fee, *190 petitioners obviously could not realize a rental profit through the corporation's payment of automobile expenses. The litmus for determining whether the taxpayer is carrying on a trade or business or is engaged in an activity for the production of income is whether the taxpayer engaged in the activity with the predominant purpose and intention of making a profit. Allen v. Commissioner,72 T.C. 28 (1979); Dunn v. Commissioner;70 T.C. 715 (1978); Yanow v. Commissioner,supra.Petitioners admit that they had no expectations of profit in the leasing transaction. Since petitioners did not use the Volare in their trade or business and the Volare was not held for the production of income petitioners' claimed depreciation on the automobile must be disallowed.
The next issue concerns petitioners' claimed deduction of $376 as employee business expenses. $276 were spent by petitioner Palle Bistrup on his trip to a Richmond symposium to explore the possibility of entering *191 the business of flagpole and pipe manufacture. Expenses incurred in anticipation of engaging in a business at a future time are not deductible. Stanton v. Commissioner,399 F.2d 326, 329 (5th Cir. 1968), affirming a Memorandum Opinion of this Court, Dean v. Commissioner,56 T.C. 895, 902-903 (1971); Frank v. Commissioner,20 T.C. 511 (1953). Petitioners' $396 expense was incurred while investigating and exploring the potential success of a new business. Accordingly, the expenditure is not deductible. Respondent has also disallowed petitioners' deduction of $988 for the purchase of two office chairs used by petitioners at U.S. Flag. The denial of the deduction is based on the fact that the chairs are assets which have a useful life of greater than one year and thus are not currently deductible. Respondent further asserts that in any event petitioners, in their individual capacities, were not engaged in a trade or business and therefore the deduction must be disallowed. We initially note that the chairs are clearly not deductible in the year of their acquisition because they are capital assets from which benefit will be derived *192 beyond the year of their acquisition. To the extent any deduction for the chairs could be realized such deduction would have to take the form of a depreciation expense allocated over the useful life of the asset. Section 167. However, we believe petitioners are not entitled to depreciate the office chairs. It seems almost axiomatic to us that the cost of providing chairs to corporate officers is a corporate expense. We are aware of no case where such an expense was viewed as a deductible employee business expense. We are cognizant of the fact that cases exist where deductions were allowed to employees for the costs of uniforms and other miscellaneous employee expenses. Commissioner v. Benson,146 F.2d 191 (9th Cir. 1944), affg. 2 T.C. 12 (1943) (cost of police uniforms deductible); Harsaghy v. Commissioner2 T.C. 484 (1943) (deduction for nursing uniforms allowed); Meier v. Commissioner,2 T.C. 458 (1943) (deduction allowed for uniforms of a nurse employed in tuberculosis hospital). These cases, however, are distinguishable from the case at bar in that they are premised on the ground that the expenditures involved *193 were required by the circumstances of their employment and such expenditures were not absorbed by the employer. Nurses are required by their employment to wear a specific uniform while on duty. Where the employer of nurses does not provide its employees with the proper hospital garb, nurses have no choice but to purchase their own work clothing. Much the same may be said of uniformed officers of municipalities and states. In the instant case petitioners were provided with chairs by the corporation but felt that the chairs were uncomfortable. Thus, to suit their own tastes and comfort they expended $988 for two more comfortable chairs. Although these chairs were used exclusively for business, petitioners were provided with other chairs and thus their expenditure for new chairs cannot be regarded as required by their employment. Accordingly, we hold that the expenditure for the office chairs falls within the ambit of section 262. [4]
The final issue presented concerns the amount of income inuring to petitioners' benefit *194 through their nonbusiness use of two automobiles leased by their corporation. The parties agree that petitioners' rent-free personal use of the leased automobiles constitutes income to petitioners. Thus, the dispute more narrowly focuses on the proper percentage of the automobile leasing and maintenance costs expended by the corporation which is to be considered income to petitioner. Petitioners, at trial, have agreed with respondent's determination that the Chrysler automobile was used 90 percent for business and 10 percent for personal purposes. Respondent contends that 90 percent of petitioners use of a Plymouth Fury automobile was personal purposes. Petitioners argue that the proper allocation is 75 percent business and 25 percent personal. We find that of the 6,000 miles driven in the Fury in 1976 3,500 miles were for the personal purposes of petitioners. Petitioners used the automobile for their commute to work. Commuting expenses are generally viewed as personal expenditures.Cf. Section 1.262-1(b)(5), Income Tax Regs., Commissioner v. Flowers,326 U.S. 465 (1946); Anderson v. Commissioner,60 T.C. 834 (1973). Petitioner testified *195 that they deemed it prudent to keep the automobile at home because of recurrent acts of vandalism at their place of business. Yet petitioners were confronted with the option of renting a parking place for the automobile near work and rejected the alternative. Thus, without accessible public transportation which petitioners could utilize, it is apparent that petitioners' use of the Fury for commuting was for their personal convenience. cf. Sharon v. Commissioner,66 T.C. 515, 524 (1976), affd. per curiam, 591 F.2d 1273 (9th Cir. 1978). The commuting distance was approximately 7 miles per day. Considering that petitioners used the Fury for commuting at least five, sometimes six times a week, we have determined that petitioners registered 2,000 miles on the automobile in 1976 while commuting to and from work. Additionally, petitioners have admitted that 25 percent of the Fury's 1976 mileage was registered in pursuit of petitioners' personal purposes. In light of petitioners insistence that their commuting mileage had a business purpose, we view petitioners' admission as evidence of the fact that petitioners drove the Fury approximately 1,500 miles *196 in 1976 for personal reasons other than commuting. Thus, we hold that petitioners drove the Fury 3,500 nonbusiness miles in 1976 and accordingly 7/12 (i.e. 3,500 miles / 6,000 miles) of the corporate expenditures relative to the Fury ($2,959) represent gross income to petitioners in 1976. Decision will be entered under Rule 155. Footnotes
1. Income of $3,098 for the personal use of the automobiles was derived by respondent as follows: ↩
Rental and main-
tenance costs
Personal
supplied by U.S.
use by
Flag
petitioners
Income
Plymouth Fury
$2,959
90%
$2,663
Chrysler
4,348
10%
435
Total Income
$3,098
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
3. Respondent has not asserted that the payments made by U.S. Flag respecting the Volare were income to petitioners. Accordingly, we have no addressed this issue.↩
4. Section 262 provides: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living or family expenses.↩