CARY E. GILLUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gillum v. Commissioner
Docket No. 25161-87
United States Tax Court
T.C. Memo 1990-105; 1990 Tax Ct. Memo LEXIS 107; 59 T.C.M. (CCH) 1; T.C.M. (RIA) 90105; March 1, 1990
Ernest A. Conner, for the petitioner. Gary D. Kallevang, for the respondent. SCOTT *105 MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1983 in the amount of $ 24,859 and additions to tax under sections 6651(a)(1), [1] 6653(a)(1) and 6661 in the amounts *109 of $ 4,593.50, $ 1,242.95 and $ 6,214.75, respectively. Respondent also determined an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest on the entire deficiency. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision, (1) whether petitioner's activity with respect to certain property he owned was an activity not engaged in for profit within the meaning of section 183 and (2) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) and section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Cary E. Gillum (petitioner), who resided in Mesquite, Texas at the time his petition in this case was filed, filed a Federal income tax return, Form 1040, with the Internal Revenue Service at Austin, Texas for the calendar year 1983 on August 16, 1984. Petitioner is a physician actively engaged in the practice of medicine. In *110 September 1982, he bought 3.2 acres of land improved with a 10,000 square foot, metal, clear span airplane maintenance facility with an attached shed for office space (the airport facility) for $ 140,000. Petitioner purchased this property from his brother for $ 20,000 cash and the assumption of three notes. At approximately the same time, petitioner acquired, also from his brother, all the outstanding shares of stock of Royal Aviation Services Inc. (Royal), a Texas corporation, which elected to be taxed as a subchapter S corporation under section 1361. Petitioner was the sole shareholder of Royal from the time of his acquisition of its stock through the time of the trial of this case. Royal was in the business of servicing, fueling, and repairing general aviation aircraft. When petitioner acquired the corporate stock and the airport facility, Royal was operating its business in the airport facility and *106 continued to operate at that facility through the time of the trial of this case in September 1988. When petitioner acquired the stock of Royal it was primarily repairing aircraft that had been damaged. It was not operating profitably at the time, but petitioner was *111 of the opinion that if Royal did more servicing and fueling and minor repair work, it could be operated profitably. The facility purchased by petitioner was adjacent to and had access to the runways of the Hudson Airport which was owned and operated by the city of Mesquite, Texas. Mesquite, Texas is close to Dallas, Texas on the east side. Prior to purchasing the airport facility and the stock of Royal, petitioner had been negotiating for the purchase of some other land adjacent to the airport facility. When petitioner acquired the airport facility in September 1982, he was aware that the winter months in Texas were slow months for general aviation, but expected the business of Royal to pick up in 1983. There was a decline in the general economy in Texas in 1983. Improvements to the runways of the Hudson Airport in 1983 blocked access of planes to Royal's business for part of the year, causing some reduced sales. Petitioner became active in the Mesquite, Texas Chamber of Commerce and sought to induce favorable policies from the Hudson Airport Board which controlled the airport by familiarizing himself with the deliberations of the Mesquite City Council. He also sought to *112 have the ad valorem taxes on the airport facility reduced by making regular appearances before the Dallas County Appraisal District. Petitioner utilized some equipment that he owned to improve the parking area at the airport facility by spreading gravel he received free from the Hudson Airport over that facility. He also made other minor improvements such as the installation of concrete aprons and tie-downs. The only economically feasible use of the airport facility was as a facility for making repairs to planes, selling fuel and doing routine maintenance of aircraft. It possibly would have been suitable for storing aircraft, but this would not have been the best use of the facility. Royal had to have a facility comparable to the airport facility in order to operate. The airport facility owned by petitioner was the only feasible facility at Hudson Airport for the operation of Royal's business. Petitioner permitted Royal to use the airport facility rent free and without a formal lease agreement from the time he acquired the facility through the time of trial of this case. It was petitioner's intention to enter into some form of lease agreement with Royal providing for a payment *113 of rent by Royal for use of the airport facility when Royal's operations became profitable. Petitioner preferred to keep the airport facility in his individual name, rather than placing it in Royal's name, to keep the airport facility free of any liabilities that Royal might incur in connection with its airplane repair business. The airplane repair business is a high risk operation. Sometime subsequent to the year here involved, petitioner investigated renting of the airport facility to an unrelated party, but did not complete the negotiations when he decided not to discontinue Royal's operations. On February 10, 1987, income tax returns for an S corporation, Forms 1120, were filed by Royal for the calendar years 1983, 1984 and 1985. No returns had been filed for these years by Royal prior to the returns filed on February 10, 1987. On the returns filed in 1987, Royal reported the following gross receipts, gross income, and deductions with a resulting small net loss: Year
Gross Receipts
Income
Deductions
1983
$ 187,171
$ 82,785
$ 87,974
1984
90,217
48,049
49,828
1985
75,722
38,003
40,476
Royal has not made a profit *114 in any of the years of its operation. In the early 1960s, petitioner owned some rental apartments, but has not owned any rental property since 1964, unless the airport facility he acquired in 1982 is considered rental property. Petitioner had no experience as a real estate developer. He did not consult with any real estate experts with respect to the optimum use or development of the airport facility. Petitioner's income from his profession as a physician, as reported on his 1982, 1983, and 1984 income tax returns, was $ 40,000, $ 78,426, and $ 53,062, respectively. On the Profit or (Loss) From Business or Profession Schedules C attached to petitioner's income tax return for each of the years 1982, 1983, and 1984, with respect to the airport facility, petitioner reported no income and claimed the following deductions: Year
Depreciation
Interest
Taxes Other Total
1982
$ 17,450
$  6,197 $    17
$   797
$ 24,461
1983
23,005
11,420 5,400
1,502
41,327
1984
23,032
7,998 5,450
-
36,480
Respondent in his notice of deficiency to petitioner for the year 1983 disallowed $ 24,507 of the claimed business loss, which *115 consisted of the depreciation of $ 23,005 and other deductions of *107 $ 1,502 claimed by petitioner on the Schedule C with respect to the airport facility. OPINION Petitioner contends that his activity with respect to the airport facility was a trade or business within the meaning of section 162 or that the airport facility was property held for the production of income within the meaning of section 212. It is petitioner's position that he is entitled to deduct the expenses of operation of the airport facility including depreciation either as trade or business expenses or as expenses with respect to property held for the production of income. Petitioner contends that he sought a profit from the airport facility by anticipating rentals which would be paid by Royal when its business was sufficiently successful to permit it to make such payments and by appreciation in the value of the land and improvements of the airport facility. Respondent takes the position that petitioner's activity with respect to the airport facility was an activity not engaged in for profit by petitioner within the meaning of section 183. Respondent does not contend that Royal was not engaged in a *116 trade or business with the objective of making a profit. His contention is that petitioner's activity with respect to his personally-held property, the airport facility, was not an activity engaged in for profit. Respondent contends that petitioner has made no showing of any reason to anticipate appreciation in the value of the land and improvements at the airport facility, other than the general hope of investors in real estate, that their real estate will appreciate in value. Section 183 provides that in the case of an activity engaged in by an individual, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in that section. Section 183(b) provides that in the case of an activity not engaged in for profit there shall be allowed the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year, if such activity were engaged in for profit, but only to the extent that the gross income derived from such *117 activity for the taxable year exceeds the deductions allowable by reason of the provisions of section 183(b)(1). In the instant case, respondent has not disallowed petitioner's claimed deductions for taxes and interest, but has disallowed the deductions which would be allowable if the activity were engaged in for profit. Since there was no gross income derived from petitioner's activity with respect to the airport facility, respondent allowed no portion of such deductions. Section 183(c) defines an activity not engaged in for profit to mean any activity other than one with respect to which deductions are allowable under section 162 or section 212. In order to be engaged in an activity for profit a taxpayer must have an actual and honest objective of making a profit. Elliott v. Commissioner, 90 T.C. 960, 970 (1988); Dreicer v. Commissioner, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The determination of whether petitioner has an actual and honest objective of making a profit is a factual one and in making such determination, greater weight is given to objective factors than to a taxpayer's statement *118 of his intent. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). A taxpayer's objective of making a profit must be bona fide. Section 1.183-2(b), Income Tax Regs., lists nine factors to be considered in determining whether an activity is engaged in for profit. These factors are: the manner in which the taxpayer carries on the activity, the taxpayer's expertise or that of his advisors, the time and effort expended by the taxpayer in carrying on the activity, the expectation that assets used in the activity may appreciate in value, the success of the taxpayer in carrying on similar or dissimilar activities, the taxpayer's history of income or losses with respect to the activity, the amount of occasional profits, if any, which are earned, the financial status of the taxpayer, and whether elements of personal pleasure or recreation are involved. No one factor is conclusive. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Because of the nature of the real property which petitioner *119 contends he held for rental purposes, his activity with respect to this property does not require extended time and effort. The record shows that petitioner did expend the necessary time and effort on the property to keep it usable for the operation of an airplane repair business. Petitioner had no special expertise in the real estate business, but there is no indication that any special expertise was needed to determine the best use for the airport facility. The fact that petitioner received no income from the property in the year here in issue is some indication of lack of profit objective. However, the fact that there were no elements of personal pleasure or recreation involved in petitioner's ownership of the airport facility is indicative of a profit objective. Section 1.183-2(b)(9), Income Tax Regs., provides in part: Elements of personal pleasure or recreation. The presence of personal motives in carrying *108 on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. On the other hand, a profit motivation may be indicated where an activity *120 lacks any appeal other than profit. It is not, however, necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits. For example, the availability of other investments which would yield a higher return, or which would be more likely to be profitable, is not evidence that an activity is not engaged in for profit. An activity will not be treated as not engaged in for profit merely because the taxpayer has purposes or motivations other than solely to make a profit. * * * Therefore, the lack of any appeal to petitioner in owning this property other than for a profit is indicative that petitioner was engaged in the activity of owning the airport property with a profit objective. Also, under the provisions of this regulation the fact that petitioner might have rented the property to someone other than Royal at a profit in 1983 is not conclusive of no profit objective. Furthermore, this was the first full year of petitioner's ownership of the airport facility. He testified that it was his intent to receive a rental from Royal that would produce a profit from his ownership of the airport facility when *121 Royal had sufficient income to pay a fair rental for the property. The fact that economic conditions in Dallas deteriorated in 1983 and that the access to the runways at Hudson Airport were cut off from Royal for a part of that year, in part explains Royal's failure to make a profit with which to pay rent in 1983. In petitioner's favor is the fact that the year here involved was his first full year of ownership of the airport facility. In this year there was no "history of losses" from the airport facility because of Royal's inability to pay rent. As we pointed out in Landry v. Commissioner, 86 T.C. 1284, 1305 (1986), the statute "negates a finding that Congress intended to require that a taxpayer have a 'primary good faith intent' to earn a profit from the activity during each taxable year." As we further pointed out in Landry, section 183(d) "provides tacit recognition that many businesses are fraught with losses during their startup years [footnote ref. omitted]." 86 T.C. at 1305. While many years of losses are indicative of lack of a profit objective, losses in the first full year of the activity carry no such strong inference. Also, the *122 fact that petitioner favored his wholly-owned corporation rather than seeking a profitable rental from another source in the first full year of his ownership of the airport facility is not determinative of a profit objective under section 1.183-2(b)(9), Income Tax Regs. quoted above. This case is factually distinguishable from Yanow v. Commissioner, 44 T.C. 444 (1965), affd. per curiam 358 F.2d 743 (3d Cir. 1966), on which respondent relies. In that case, a taxpayer owned three pieces of property which he permitted corporations in which he held a controlling interest to use at less than a fair rental value. He had leased the properties to his controlled corporations over an extended number of years at a rental that could not produce a profit. The case of Jasionowski v. Commissioner, 66 T.C. 312 (1976), also relied on by respondent is distinguishable from this case on its facts. In the Jasionowski case we stated: We simply are unable to understand how we can impute a profit motive to petitioners when they voluntarily entered into a lease agreement under which, for a period of 7 consecutive years, *123 they were bound to incur losses as distinguished from the usual "start-up" situation where early losses are anticipated but where effort and imagination could turn the venture toward profits rather quickly. [66 T.C. at 322.] Petitioner had no lease with Royal. His testimony was that he expected Royal to make a profit and when it did make a profit sufficient to pay a fair rent for the airport facility, he expected to enter into a lease of the facility to Royal at a fair rental. While the evidence of petitioner's profit objective is not overwhelming, weighing all facts of record, we conclude that the preponderance of such evidence supports the conclusion in this first full year of petitioner's ownership of the airport facility that his ownership of that property was an activity engaged in for profit. Petitioner made no specific showing of error on the part of respondent in determining additions to tax under section 6653(a)(1) and (2) and section 6661, aside from the part of the deficiency relating to the section 183 issue. Petitioner merely argues that his position with respect to the claimed deductions has merit. We of course have decided the litigated issue *124 in petitioner's favor. However, other issues were disposed of by agreement of the parties. To the extent that those agreements do not show error in respondent's determination of additions to tax under sections 6653(a)(1) and (2) and section 6661, petitioners have produced no evidence to show such error. To the extent that the additions to tax relate to the section 183 issue, petitioner has shown error in respondent's determination *109 of additions to tax just as he has as to the determination of the deficiency relating to this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩